1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

WILLIAM HOWARD WITKOWSKI,

7                              Petitioner,

8       v.

9

JASON BENNETT,

                              Respondent.

10

Case No. 3:24-cv-05812-KKE-TLF

REPORT AND
RECOMMENDATION

Noted for: June 17, 2025

11       This matter comes before the Court on petitioner's petition for writ of *habeas*

12 *corpus* under 28 U.S.C. § 2254, challenging the legality of his conviction for multiple

13 counts of the crimes of possession of a controlled substance, possession of a stolen

14 firearm, and unlawful possession of a firearm. Dkt. 7 at 1; Dkt. 18-1 at 2-3. Petitioner

15 presents three grounds for *habeas corpus* relief: ineffective assistance of trial counsel

16 based on the failure to challenge the validity and execution of the second search

17 warrant on the basis of (1) lack of personal service; (2) absence of a court

18 representative signature on the date of the search; and (3) the four-day delay in

19 obtaining the judicial officer's signature after the date of the search. Dkt. 7 at 6.

20       For the reasons set forth below, the undersigned recommends that the petition

21 (Dkt. 7) be DISMISSED with prejudice. Also, for the reasons set forth below, the

22 undersigned recommends that issuance of the certificate of appealability (COA) should

23 be DENIED.

24
25

REPORT AND RECOMMENDATION - 1

1

BACKGROUND

2

I. Statement of Facts

3

The Washington Court of Appeals ("Court of Appeals") summarized the facts

4

relevant to this matter as follows:

5

In October 2015, Pierce County Sheriff's Deputy Martin Zurfluh was following up on investigations that other patrol deputies had begun. Deputy Zurfluh had been contacted by Detective Kyle Torgerson, who said that Witkowski and Tina Berven were stealing power from a public utility power provider. Deputy Zurfluh also learned that there may be a stolen all-terrain vehicle (ATV) on the property.

6

7

On October 26, Deputy Zurfluh contacted Kenneth Klotz, the general manager of the power company. Klotz informed him that the power bill for the residence was in Berven's name. Klotz also told the deputy that Witkowski also lived at the residence.

8

9

Klotz told Deputy Zurfluh that a field technician, James Field, from the power company had gone to the residence on October 6. Field "saw that the power meter that belonged at that residence was on the ground at the base of the power pole and there was a stolen meter, or a different meter, in its place." Verbatim Report of Proceedings (VRP) (Aug. 30, 2016) at 14. Field took photographs of everything, went back to his office, and later returned to the residence. When Field returned, "[h]e saw that the meter that was on the pole, that was found to be stolen, had been removed and the original one was down below still." VRP (Aug. 30, 2016) at 15. The meter down below was "the original assigned power meter assigned to that residence." VRP (Aug. 30, 2016) at 15. Klotz and Field were able to determine that the stolen meter that Field observed on October 6 belonged to a temporary service location a couple of miles away from the residence. The stolen meter was identified by serial number.

10

11

12

13

14

15

16

A. THE INITIAL ENTRY ONTO THE CURTILAGE

17

Klotz advised Deputy Zurfluh that there "was a little more than $8,000 in . . . stolen power costs, the meter, service calls, [and] several things that were established in that bill." VRP (Aug. 30, 2016) at 23-24. After receiving this information from Klotz on October 26, Deputy Zurfluh went to the residence along with Field and two other deputies. Deputy Zurfluh testified that he went there "to discuss with Mr. Witkowski and Ms. Berven about the stolen power, and, also, try to locate the stolen power meter." VRP (Aug. 30, 2016) at 18-19.

18

19

20

Deputy Zurfluh, Field, and the other deputies parked in front of the gate at the residence. When Deputy Zurfluh had initially drove by, the gate to the property was open. Berven drove up to the property and got out of the car to retrieve the mail. As he approached, Deputy Zurfluh noticed that the curtilage adjacent to the residence was enclosed by a 6 to 8 foot fence and that the access gate was now locked. Deputy Zurfluh testified that he told Berven that they needed to speak with the residents about the stolen power and, although she was quite upset, Berven "opened the gate" and let them onto the property.

21

22

23

24

25

REPORT AND RECOMMENDATION - 2

VRP (Aug. 30, 2016) at 20-21. Deputy Zurfluh did not give Berven any *Ferrier* warnings. Berven confirmed this course of events in her testimony.

B. VIEWING THE POWER POLE AND GENERATOR

After Berven opened the locked gate in the driveway, she allowed the deputies and Field onto the property, they "all walked over towards the power pole, which is located kind of in the center of the property, she just went with us." VRP (Aug. 30, 2016) at 22. Witkowski came onto the front porch when Berven called him. He did not object to the deputies or ask them to leave the property.

The power meter was attached to the base of the power pole on the property, but it could not be seen from the street because the power pole was behind the residence. Deputy Zurfluh observed that the power pole had no power meter hooked up on the pole itself. There was a power meter at the base of the pole ("just lying there"), which Field identified as belonging to the property. VRP (Aug. 30, 2016) at 24. That meter was not hooked up to the electricity pole. There was a big commercial generator hooked up to the electrical leads coming out of the pole. Berven told Deputy Zurfluh that Witkowski was an electrician and that he had hooked up the generator to the pole. While standing at the power pole, Deputy Zurfluh observed a red and black ATV inside of a tent like structure which was partially open which matched the description of the stolen ATV reported to him by Detective Torgerson.

A few days later, the deputies requested a search warrant for the stolen power meter. The search warrant affidavit contained the information Deputy Zurfluh received from Field, including Field's two visits to the property. The affidavit also contained information about the October 26 visit to the property.

The search warrant was served on October 29. Deputies searched a black BMW on the premises and found suspected heroin, a scale, suspected oxycodone pills suspected methamphetamine, and crib notes. While searching the house, the deputies discovered evidence suggesting there might be controlled substances and illegal firearms on the premises.

C. SECOND SEARCH WARRANT

Based on information obtained on the property when executing the first search warrant, the deputies requested and obtained a second search warrant related to the suspected illegal drugs and firearms. The trial judge authorized this search warrant during a telephonic hearing on October 29, 2015, and signed the warrant on November 2. During the execution of the second search warrant, the deputies seized numerous firearms and later determined that seven of the firearms were stolen.

II. PROCEDURAL HISTORY

The State charged Witkowski with multiple felonies arising from drug and firearms evidence seized during the execution of the two search warrants on the property. Witkowski filed a CrR 3.6 motion to suppress the drug and the firearms evidence seized on his property, arguing that the evidence should be suppressed because the deputies failed to give *Ferrier* warnings before entering the property

on October 26.[1] The trial court entered the following relevant findings as to the initial entry and *Ferrier* warnings:

THE UNDISPUTED FACTS

. . . .

7. After speaking with Klotz, Deputy Zurfluh went to the property with two other deputies and James Field. The purpose for going to the property was to speak with Berven and Witkowski about the theft of power and the stolen power meter.

. . . .

FINDINGS AS TO DISPUTED FACTS

. . . .

3. The [c]ourt finds Deputy Zurfluh's testimony credible that the deputies were not at the property to search.

. . . .

REASONS FOR ADMISSIBILITY OR INADMISSIBILITY OF THE EVIDENCE

. . . .

2. This was not a knock and talk procedure, there[fore] *Ferrier* warning were not required for entry onto the property. The deputies were not there to search but rather to talk with the occupants regarding the theft of power.

CP at 41, 45.

The trial court found that the deputies and Field did not enter onto the residence curtilage for the purpose of conducting a search, but only to talk to the occupants about the alleged theft of power on the property. The court stated, "The officers expressed a desire to talk about this, not necessarily to search, I don't find this to be analogous to the knock and talk scenario." VRP (Aug. 31, 2016) at 80. This is also reflected in the trial court's written findings.

A jury convicted Witkowski as charged.

Dkt. 18-1 at 193-197 (Ex. 7).

II. <u>State Court Procedural History</u>

A.      Direct Appeal

The State charged petitioner with multiple felonies arising from the drug and firearms evidence seized during the execution of two search warrants on his property. Dkt. 18-1 at 196 (Ex. 7). At trial, petitioner filed a motion under Washington State Superior Court Criminal Rule ("CrR") 3.6 seeking to suppress the drug and firearms

---

[1] [FN 4 by Court of Appeals] The trial court initially suppressed the firearms found in the locked gun safe in the house which were not included in an addendum to the search warrant. The State appealed the suppression order and we reversed. *State v. Witkowski*, 3 Wn. App. 2d 318, 415 P.3d 639 (2018).

1    evidence, arguing that the evidence should be suppressed because the deputies failed

2    to give *Ferrier* warnings before entering his property on October 26, 2015. *Id.* The trial

3    court denied the motion, and a jury convicted petitioner as charged. *Id.* at 197 (Ex. 7).

4         On direct appeal to the Court of Appeals, petitioner argued that the trial court

5    erred in finding that *Ferrier* warnings were not required prior to the deputies entering the

6    curtilage of his property. *Id.* at 192-193, 197-198 (Ex. 7). Petitioner also argued for the

7    first time on appeal that the second search warrant was invalid because it was not

8    signed until several days after the court authorized it. *Id.* at 199 (Ex. 7).

9         On April 6, 2021, the Court of Appeals held that the trial court erred in concluding

10   *Ferrier* warnings were not required and remanded for the trial court to determine which

11   portions of the search warrant should be excised and whether sufficient probable cause

12   existed following excision. *Id.* at 201 (Ex. 7). The Court of Appeals declined to address

13   petitioner's argument regarding the warrant's signature timing as he failed to raise the

14   argument with the trial court thus the factual record was not developed on the issue. *Id.*

15   at 199 (Ex. 7). The Court concluded that on the record before it, petitioner failed to

16   demonstrate manifest constitutional error. *Id.*

17        On remand, the trial court adopted the State's proposed excisions and concluded

18   that after excising the warrant affidavit in accordance with the remand instructions, the

19   remaining facts established probable cause to search the property and outbuildings. *Id.*

20   at 412-413 (Ex. 13).

21        Petitioner appealed again, arguing that the evidence supporting most of his

22   convictions should have been suppressed as fruit of the poisonous tree because it was

23   gathered during execution of a search warrant based on stale information and therefore

24

25

not supported by probable cause. *Id.* at 413 (Ex. 13). The Court of Appeals affirmed the trial court's determination on October 25, 2022. *Id.* at 417 (Ex. 13). Petitioner moved the court to reconsider, but the court denied his motion on November 21, 2022. *Id.* at 420-426, 429 (Exs. 14, 15). The court issued its mandate on December 30, 2022. *Id.* 431 (Ex. 16).

Petitioner did not file a motion for discretionary review with the Washington Supreme Court.

### B.    Personal Restraint Petition (PRP)

On June 6, 2023, petitioner signed a CrR 7.8 motion seeking to vacate the judgment. *Id.* at 435-474 (Ex. 17). On June 27, 2023, petitioner filed a CrR 7.8 motion in Pierce County Superior Court challenging his 2019 convictions. *Id.*; Dkt. 18-2 at 53-54 (Ex. 19). The Superior Court transferred the motion to the Court of Appeals for consideration as a PRP after finding it was untimely under Revised Code of Washington ("RCW") 10.73.090. Dkt. 18-2 at 53-54.

On September 26, 2023, the Court of Appeals rejected the transfer order and returned the matter to the Superior Court, finding that petitioner's motion was not time-barred because his judgment and sentence became final less than a year earlier on December 30, 2022. *Id.* This ruling became final on November 13, 2023. *Id.* at 165 (Ex. 29).

On October 11, 2023, petitioner then filed a PRP in the Court of Appeals, claiming ineffective assistance of counsel based on his trial counsel's failure to challenge an allegedly invalid second search warrant. *Id.* at 56-96 (Ex. 20). Specifically, petitioner argued that (1) the warrant was not signed until four days after the search,

1    and (2) no judicial officer or authorized person's signature appeared on the warrant on

2    the search date. *Id.* at 56-96, 98, 105-107 (Ex. 20).

3    On March 29, 2024, the Acting Chief Judge dismissed petitioner's petition under

4    Rule of Appellate Procedure ("RAP") 16.11(b). *Id.* at 105-107 (Ex. 22). The court noted

5    that petitioner relied on *State v. Ettenhofer*, 119 Wn. App. 300 (2003) to support his

6    claims. *Id.* The court distinguished *Ettenhofer* because, in that case, no written search

7    warrant was executed and because no written search warrant was issued, the court in

8    that case determined the error was not a mere ministerial error to which harmless error

9    could apply. *Id.* In petitioner's case, however, the court observed that petitioner did not

10   assert there was no written search warrant at the time of the search but only that it was

11   not signed by the judge and/or an authorized person had not affixed the judge's

12   signature to the warrant before the search occurred as required by CrR 2.3. *Id.* The

13   court determined that "the absence of the issuing judge's signature or the failure of an

14   authorized individual to affix the issuing judge's signature when the search warrant was

15   issued, as required under CrR2.3(c), constituted a ministerial error that is subject to

16   harmless error." *Id.* The Court further determined that because petitioner "did not allege

17   that the judge did not authorize the search warrant, the lack of the signature or the

18   failure of an authorized individual to affix the court's signature is harmless." *Id.*

19   Accordingly, the court found that counsel was not ineffective in failing to challenge the

20   second search warrant. *Id.*

21   Petitioner sought discretionary review in the Washington Supreme Court. *Id.* at

22   112-119 (Ex. 24). In his motion for discretionary review, petitioner presented two issues

23   for review: (1) "Do the facts of [petitioner's] claim mirror those of *State v. Ettenhofer*, 119

24

25

1   Wn. App. 300, 307 79.P.3d 478"; (2) "If the facts of [petitioner's claim mirror those of

2   *Ettenhofer*, would [petitioner] be entitled to the relief as argued and requested in his

3   PRP?" *Id.* at 114. (Ex. 24). Petitioner proceeds to argue that the second search warrant

4   was deficient in his case because "the search warrant was, albeit authorized on Oct 29,

5   2015, it was not signed until 4 days after the search. *Id.* at 115 (Ex. 24). No court

6   ordered signature was affixed on the document on Oct 29, 2015, and the record is

7   'completely absent' on [the officer] serving [petitioner] the second warrant as required by

8   CrR 3.2(d)." *Id.* Petitioner asserts that "[petitioner] in his PRP complains his trial counsel

9   was ineffective for not addressing the faulty second warrant as it mirrors the exact facts

10  found in *Ettenhofer*, 119 Wn. App." *Id.* Petitioner attached a copy of his PRP to his

11  motion for discretionary review as an appendix. *Id.* at 120-140 (Ex. 24).

12      On June 17, 2024, the Deputy Commissioner denied review. *Id.* at 151-152 (Ex.

13  25). The opinion denying review stated:

14      Witkowski challenges the validity of a search of his property pursuant to a
        second search warrant, arguing that a motion to suppress would have been
15      granted on the basis of *State v. Ettenhofer*, 119 Wn. App. 300, 79 P.3d 478
        (2003). The Court of Appeals there held that a search pursuant to a warrant was
16      invalid where it was based on a telephonic warrant that was never reduced to
        writing and signed and served, as required by CrR 2.3(c) and in violation of
17      article I, section 7 of the Washington Constitution. *Id.* at 307-09. But here a
        written warrant was prepared, and though the issuing judge did not personally
18      sign the warrant until a few days later, Witkowski cites no authority suggesting
        this was anything but a ministerial defect that does not require suppression
19      absent prejudice, which Witkowski does not show exists. *See Ettenhofer*, 119
        Wn. App. at 307 (ministerial mistakes in issuance of warrant reversible only if
20      defendant prejudiced). Witkowski also asserts there is no evidence he was
        personally served with the warrant when it was executed. But he states that he
21      had been arrested after execution of the first warrant, before the second one was
        issued, and was on his way to jail. And the property was also occupied by his
22      girlfriend. Further, if no one is present, a copy of the warrant may be posted on
        the premises. CrR 2.3(d).
23          Witkowski finally claims there is no evidence a written warrant had
        actually been prepared by the time of the second search. But at a suppression
24      hearing (not concerning specifically the second warrant), the officer who sought
        the warrant testified that he wrote the warrant on his laptop in his car before

25

REPORT AND RECOMMENDATION - 8

calling a judge, and that when the judge approved the warrant, the officer served it. No. 53412-6-II, Verbatim Report of Proceedings (Aug. 30, 2016) at 74-75.[2]

In sum, Witkowski fails to show that a challenge to the second search warrant would have succeeded, and thus he does not show that defense counsel was ineffective.

*Id.* at 151-152 (Ex. 25). Petitioner moved to modify the Deputy Commissioner's ruling and the motion was denied. *Id.* at 154-157, 160 (Exs. 26, 27). The Court of Appeals issued its certificate of finality on September 10, 2024. *Id.* at 162 (Ex. 28).

Petitioner filed his federal habeas petition in this court on September 13, 2024. Dkts. 1, 7.

## GROUNDS FOR RELIEF

Petitioner presents the following Grounds for federal *habeas* relief in his petition:

**Ground 1a**: Trial counsel rendered ineffective assistance by failing to object to an invalid search warrant on the basis that petitioner was not personally served with the warrant.

**Ground 1b**: Trial counsel rendered ineffective assistance by failing to object to an invalid search warrant on the basis that no affixed court representative signature appeared on the search warrant on the date of the search.

**Ground 1c**: Trial counsel rendered ineffective assistance by failing to object to an invalid search warrant on the basis that the document was signed four days after the search occurred.

Dkt. 7 at 5.

## EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal habeas corpus petition by a person in custody pursuant to a judgment of a state court, the "determination of a

---

[2] [FN 1 by Supreme Court] The reference is to the record from Witkowski's first direct appeal, of which I take notice.

factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. §

2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness

by clear and convincing evidence." *Id.* Where he or she "has diligently sought to develop

the factual basis of a claim for habeas relief, but has been denied the opportunity to do

so by the state court," an evidentiary hearing is not precluded. *Baja v. Ducharme*, 187

F.3d 1075, 1078-79 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th

Cir. 1998)).

If, however, the petitioner fails to develop "the factual basis of a claim" in the

state court proceedings, an evidentiary hearing on that claim will not be held, unless the

petitioner shows:

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously
unavailable; or

(ii) a factual predicate that could not have been previously discovered
through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by
clear and convincing evidence that but for constitutional error, no
reasonable factfinder would have found the applicant guilty of the
underlying offense

28 U.S.C. § 2254(e)(2). The phrase "failed to develop" contained in 28 U.S.C. §

2254(e)(2) "implies some lack of diligence" on the petitioner's part. *Williams v. Taylor*,

529 U.S. 420, 430-31 (2000). Thus, "a failure to develop the factual basis of a claim is

not established unless there is lack of diligence, or some greater fault, attributable to the

[petitioner] or the [petitioner's] counsel." *Id.* at 432. Accordingly, "[i]f there has been no

lack of diligence at the relevant stages in the state proceedings, the [petitioner] has not

'failed to develop' the facts under § 2254(e)(2)," and he or she "will be excused from showing compliance with the balance of [that] subsection's requirements." *Id.* at 437.

"[A]n evidentiary hearing . . . is required where the petitioner's allegations, if true, would entitle him to relief, and the petitioner has satisfied the requirements [the Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010). Under those requirements, the "district court *must* hold an evidentiary hearing . . . when the facts are in dispute if (1) the petitioner 'alleges facts which, if proved, would entitle him to relief,' and (2) the state court has not 'after a full hearing reliably found the relevant facts.'" *Williams v. Schriro*, 423 F.Supp.2d 994, 1006 (D. Ariz. 2006) (quoting *Townsend*, 372 U.S. at 312-13) (emphasis in original); *see also Stanley*, 598 F.3d at 624.

"In any other case in which the facts are in dispute and diligence has been established, the district court . . . 'has the power, constrained only by [its] sound discretion, to receive evidence bearing upon" the petitioner's claim. *Williams*, 423 F.Supp.2d at 1006 (quoting *Townsend*, 372 F.3d at 318). Where, on the other hand, the petitioner "was afforded a full and fair hearing in state court, federal evidentiary hearings ought to be the exception, not the rule." *Pike v. Guarino*, 492 F.3d 61, 70 (1st Cir. 2007); *see also Townsend*, 372 U.S. at 318 (if the petitioner was afforded a full and fair hearing by the state court resulting in reliable findings, the district court may, and ordinarily should, accept the state court's findings).

An evidentiary hearing, therefore, "is required when the petitioner's allegations, if proven, would establish the right to relief," but it "is *not* required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176

(9th Cir. 1998) (emphasis in the original). "[W]hen issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten*¸ 137 F.3d at 1176; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required if the motion, files and records of the case conclusively show petitioner is entitled to no relief).

Furthermore, in determining whether relief is available under 28 U.S.C. § 2254(d)(1) or (d)(2) the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011); *Gulbrandson v. Ryan*, 738 F.3d 976, 993, n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that [the] evidentiary limitation [to the record before the state courts] is applicable to 2254(d)(2) claims as well."). A hearing is not required if the allegations would not entitle petitioner to relief under §2254(d). *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. 170.

Because, as discussed below, the grounds petitioner raises may be resolved based solely on the existing state court record, and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

DISCUSSION

I. <u>Exhaustion of State Court Remedies</u>

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended to afford the state courts "an initial opportunity to pass upon and

1    correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S.

2    270, 275 (1971) (internal quotation and citation marks omitted).

3        There are two avenues by which a petitioner may satisfy the exhaustion

4    requirement. First, a petitioner may properly exhaust his state remedies by "fairly

5    presenting" his claim in each appropriate state court, including the state supreme court

6    with powers of discretionary review, thereby giving those courts the opportunity to act on

7    his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364,

8    365-66 (1995).

9        Second, a petitioner may technically exhaust his state remedies by

10   demonstrating that his "claims are now procedurally barred under [state] law." *Gray v.*

11   *Netherland*, 518 U.S. 152, 162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436,

12   351 (1989)); *see also Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc).

13   If the petitioner is procedurally barred from presenting his federal claims to the

14   appropriate state court at the time of filing his federal habeas petition, the claims are

15   deemed to be procedurally defaulted for purposes of federal habeas review. *O'Sullivan*

16   *v. Boerckel*, 526 U.S. 838, 848 (1999).

17       A habeas petitioner who has defaulted his federal claims in state court meets the

18   technical requirements for exhaustion because "there are no state remedies any longer

19   'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (2007). Federal habeas

20   review of procedurally defaulted claims is barred unless the petitioner can either

21   demonstrate cause for the default and actual prejudice as a result of the alleged

22   violation of federal law, or demonstrate that failure to consider the claims will result in a

23   fundamental miscarriage of justice. *Id.* at 724. "An application for writ of habeas corpus

24

25

may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §2254(b)(2).

Respondent argues petitioner failed to properly exhaust any of the claims – Grounds 1a, 1b, and 1c -- and that these claims are now technically exhausted and procedurally barred. Dkt. 17. Respondent argues petitioner failed to fairly present these federal habeas claims to the state appellate courts because he did not clearly present each claim as a federal constitutional violation at each level of review in the state court. *Id*.

To satisfy the "fair presentation" requirement for exhaustion purposes, "[i]t has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005). To exhaust state remedies, a petitioner must present the substance of his claim to the state courts. *See Picard*, 404 U.S. at 278. The claim presented to the state courts must be the substantial equivalent of the claim presented to federal court. *See id.* The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Kyzar v. Ryan*, 780 F.3d 940, 947 (9th Cir. 2015).

Generally appealing to a broad constitutional provision alone is not sufficient to satisfy the exhaustion requirement. *See Gray v. Netherland*, 518 U.S. 52, 163 (1996) (internal citations omitted). Petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal constitution or statutes or citing to

federal or state cases analyzing the federal constitutional issue. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005); *Lyons v. Crawford*, 232 F.3d at 668, 670 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001); *see Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) ("for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue").

If the petitioner cited a state case that discusses both state and federal issues, the citation to that case must show the case involves federal issues. *See Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005) ("[w]hen a petitioner does not label his claim as federal, the mere citation to a state court case that engages in both a state and federal constitutional analysis does not suffice to exhaust the federal claim."); *Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004) ("For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues."). "Raising a state claim that is merely similar to a federal claim does not exhaust state remedies." *Fields*, 401 F.3d at 1022.

Respondent argues petitioner failed to adequately present his ineffective assistance of counsel claims as federal constitutional claims to either the state Court of Appeals or state Supreme Court, instead focusing largely on state law. Dkt. 17 at 9-16.

The Court should find petitioner fairly presented his ineffective assistance of counsel claims in the state courts as federal constitutional claims.

Specifically, in his PRP presented to the Court of Appeals, petitioner states that he "contests his convictions based on an invalid second search warrant, that his

counsel failed to properly attack at trial" and in the following sentence specifically

alleges that this violated his Sixth Amendment rights under the United States

Constitution. Dkt. 18-2 at 58. He further states "[petitioner] now claims his counsel's

ineffectiveness to properly attack the warrant at trial[.]" *Id.* Petitioner goes on to argue

that the warrant was invalid because it was not signed until four days after the search,

and no judicial officer or authorized person's signature appeared on the warrant on the

search date. *Id.* at 59, 63. He argues "police did not possess a signed written warrant

authorizing them to search for drugs and firearms." *Id.* at 68.

Petitioner cites to *State v. Ettenhofer*, 119 Wash. App. 300, 79 P.3d 478 (2003)

in support of his argument that the warrant was invalid. *Id.* at 60. Petitioner asserts that

in *Ettenhofer*, petitioner "challenged his conviction of appeal on the basis that nobody

executed a written search warrant, the judge did not affix his signature to the warrant,

and the deputy failed to give *Etenhoffer* [sic] a copy of the warrant." *Id.* at 60 (citing

*Ettenhofer*, 119 Wn. App. at 304-305). Petitioner asserts in *Ettenhofer*, "the search was

deemed unconstitutional because police failed to get a signed written warrant." *Id.*

(citing *Ettenhofer*, 119 Wn. App. At 302).

Petitioner argues because the search warrant was invalid, counsel was

ineffective in failing to challenge it. *Id.* at 58, 71. Furthermore, as the basis for his

ineffective assistance of counsel claims, petitioner cites to *Strickland v. Washington*,

466 U.S. 668 (1984) -- the United States Supreme Court case articulating the legal

standard under the United States Constitution for an ineffective assistance of counsel

claim. Dkt. 18-2 at 71-72.

In its order dismissing the PRP, the Court of Appeals explicitly acknowledged that petitioner raised ineffective assistance of counsel claims and cited to both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution as the source of such claims. *Id.* at 105.

On this record, the Court finds that petitioner fairly presented his ineffective assistance of counsel claims based upon the absence of the issuing judge's/authorized person's signature on the search warrant on the day of the search, and the four-day delay in the issuing judge signing the search warrant, to the state Court of Appeals.[3]

Furthermore, in his motion for discretionary review to the Washington Supreme Court, petitioner presented two issues for review: (1) "Do the facts of [petitioner's] claim mirror those of *State v. Ettenhofer*, 119 Wn. App. 300, 307 79.P.3d 478"; (2) "If the facts of [petitioner's claim mirror those of *Ettenhofer*, *would [petitioner] be entitled to the relief as argued and requested in his PRP*?" *Id.* at 114. (Ex. 24) (emphasis added). Petitioner proceeds to argue that the second search warrant was deficient in his case because "the search warrant was, albeit authorized on Oct 29, 2015, it was not signed until 4 days after the search. No court ordered signature was affixed on the document on Oct 29, 2015, and the record is 'completely absent' on [the officer] serving [petitioner] the second warrant as required by CrR 3.2(d)." *Id.* at 115 (Ex. 24). Petitioner asserts that "[petitioner] in his PRP complains his trial counsel was ineffective for not addressing the faulty second warrant as it mirrors the exact facts found in *Ettenhofer*[.]" *Id.* Petitioner

---

[3] The Court notes that it is somewhat less clear whether petitioner clearly raised his ineffective assistance of counsel claim based on lack of personal service of the search warrant to the state Court of Appeals as a separate federal constitutional claim. However, as discussed below, because petitioner did fairly present this claim to the Washington Supreme Court in his motion for discretionary review, and the Washington Supreme Court considered and ruled upon the claim, the Court should find this claim is exhausted.

1  further attached a copy of his PRP to his motion for discretionary review as an

2  appendix. *Id*. at 120-140 (Ex. 24).

3          On June 17, 2024, the Deputy Commissioner denied review. *Id*. at 151-152 (Ex.

4  25). The opinion denying review stated:

5          On his claim that counsel was ineffective in failing to move to suppress,
        petitioner must show that such a motion would have been granted. *State v.*
6          *Scabbyrobe*, 16 Wn. App. 2d 870, 874, 482 P.3d 301 (2021). Witkowski
        challenges the validity of a search of his property pursuant to a second search
7          warrant, arguing that a motion to suppress would have been granted on the basis
        of *State v. Ettenhofer*, 119 Wn. App. 300, 79 P.3d 478 (2003). The Court of
8          Appeals there held that a search pursuant to a warrant was invalid where it was
        based on a telephonic warrant that was never reduced to writing and signed and
9          served, as required by CrR 2.3(c) and in violation of article I, section 7 of the
        Washington Constitution. *Id*. at 307-09. But here a written warrant was prepared,
10         and though the issuing judge did not personally sign the warrant until a few days
        later, Witkowski cites no authority suggesting this was anything but a ministerial
11         defect that does not require suppression absent prejudice, which Witkowski does
        not show exists. *See Ettenhofer*, 119 Wn. App. at 307 (ministerial mistakes in
12         issuance of warrant reversible only if defendant prejudiced). Witkowski also
        asserts there is no evidence he was personally served with the warrant when it
13         was executed. But he states that he had been arrested after execution of the first
        warrant, before the second one was issued, and was on his way to jail. And the
14         property was also occupied by his girlfriend. Further, if no one is present, a copy
        of the warrant may be posted on the premises. CrR 2.3(d).
15             Witkowski finally claims there is no evidence a written warrant had
        actually been prepared by the time of the second search. But at a suppression
16         hearing (not concerning specifically the second warrant), the officer who sought
        the warrant testified that he wrote the warrant on his laptop in his car before
17         calling a judge, and that when the judge approved the warrant, the officer served
        it. No. 53412-6-II, Verbatim Report of Proceedings (Aug. 30, 2016) at 74-75.[4]
18             In sum, Witkowski fails to show that a challenge to the second search
        warrant would have succeeded, and thus he does not show that defense counsel
        was ineffective.

19  *Id*. at 151-152 (Ex. 25).

20          Respondent argues the claims petitioner presented to the Washington Supreme

21  Court were limited to challenges under state law, specifically the claim that petitioner's

22  own claims "mirror" the challenges to the search warrant raised in *Ettenhofer* (a state

23  ────────────────────────

24  [4] [FN 1 by Supreme Court] The reference is to the record from Witkowski's first direct appeal, of
   which I take notice.

25

court case). *Id.* Petitioner further argues that the Court should not construe petitioner's claims raised in his PRP as incorporated by reference to his motion for discretionary review because, although petitioner attached a copy of the PRP to the motion for discretionary review, he did not adequately reference the claims raised in his PRP. *Id.*

In *Baldwin*, 541 U.S. at 30-32, the Supreme Court observed that federal habeas corpus law does not require a state court judge to read through lower court opinions or briefing to discover the existence of a federal claim. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 32.

Yet, in some circumstances, incorporation by reference of a prior court document may satisfy the exhaustion requirement. In *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), the Ninth Circuit explained that fair and full presentation satisfying exhaustion occurs with presentation of a federal constitutional claim "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim[.]"

In *Insyxiengmay*, the petitioner presented to the state supreme court three federal constitutional claims in an appendix consisting of a full copy of his personal restraint petition, and devoted the body of his motion for discretionary review to the state appellate court's dismissal on the grounds of timeliness. *Id.* Noting that the appendix contained the arguments as to the constitutional claims, the court found clear presentation of those claims as federal issues to the state supreme court. *Id.* The court distinguished cases involving arguments relying on documents never presented to the

1   higher court, noting that *Insyxiengmay*, in the appendix filed in the state supreme court,

2   "presented extensive argument in support of all three claims as well as citations to the

3   requisite authority and to relevant parts of the record."[5] *Id*. at 668-69.

4          Here, in his motion for discretionary review to the Washington Supreme Court,

5   petitioner referenced his ineffective assistance of counsel claims and specifically

6   incorporated the claims raised in his PRP. Petitioner states "[i]f the facts of [petitioner's

7   claim mirror those of *Ettenhofer*, *would [petitioner] be entitled to the relief as argued and*

8   *requested in his PRP*?" *Id.* at 114. (Ex. 24) (emphasis added). Petitioner also

9   specifically presents the factual basis for all three challenges to the validity of the search

10  warrant that he presents in his federal habeas petition. Namely, that: "the search

11  warrant was, albeit authorized on Oct 29, 2015, it was not signed until 4 days after the

12  search. No court ordered signature was affixed on the document on Oct 29, 2015, and

13  the record is 'completely absent' on [the officer] serving [petitioner] the second warrant

14  as required by CrR 3.2(d)." *Id.* at 115 (Ex. 24). Petitioner asserts that "[petitioner] in his

15  PRP complains his trial counsel was ineffective for not addressing the faulty second

16  warrant as it mirrors the exact facts found in *Ettenhofer*" and petitioner further attaches

17  a copy of his PRP (which, as discussed above, clearly identifies his claims as premised

18  on ineffective assistance of counsel under the federal constitution) to his motion for

19  discretionary review as an appendix. *Id.* at 115, 120-140 (Ex. 24).

20

21

22  _____

23  [5] The Court notes that petitioner also argues that *Insyxiengmay*, was improperly decided and
    that incorporation by reference should not be permitted. Dkt. 17 at 13-16; *Insyxiengmay*, 403

24  F.3d 657. But this Court is bound by the holding in *Insyxiengmay* which permits incorporation by
    reference in certain circumstances. *Id.*

25

1    Furthermore, the Washington Supreme Court interpreted petitioner's motion for

2    discretionary review as raising ineffective assistance of counsel claims based upon

3    petitioner's arguments now raised in his federal habeas petition regarding the delay in

4    signing the warrant and the lack of personal service of the warrant (Grounds 1a, 1b, and

5    1c) and ruled upon those claims. *See* Dkt. 18-2 at 151-152 (Ex. 25).

6    Accordingly, the Court should find that petitioner has properly exhausted all of his

7    federal habeas Grounds (1a, 1b, and 1c).

8    II.  Analysis of the Issues Raised in the Petition

9    A habeas corpus petition filed under 28 U.S.C. § 2254:

10   [S]hall not be granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the claim--

11   
12   (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
     Court of the United States; or

13   (2) resulted in a decision that was based on an unreasonable determination
     of the facts in light of the evidence presented in the State court proceeding.

14   28 U.S.C. § 2254(d).

15   A state court decision is "contrary to" the Supreme Court's "clearly established

16   precedent if the state court applies a rule that contradicts the governing law set forth" in

17   the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting

18   *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). It also is contrary to the Supreme

19   Court's clearly established precedent "if the state court confronts a set of facts that are

20   materially indistinguishable from a decision" of the Supreme Court, "and nevertheless

21   arrives at a result different from" that precedent. *Id.*

22   A state court decision involves an "unreasonable application" of the Supreme

23   Court's clearly established precedent if: (1) the state court "identifies the correct

24   
25

governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This is a "'highly deferential standard,'" which "demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore, "a state prisoner must show that the state court's ruling on the claim being presented was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

A habeas corpus petition also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court "may not simply disagree with the state court's factual determinations," but it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004);  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Pinholster*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011). In addition, generally "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780 (1990)). The error, furthermore, generally must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S.

750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

Having concluded all of petitioners Grounds were properly exhausted, the Court will now analyze Grounds 1a, 1b, and 1c, on the merits.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. First, a defendant must demonstrate their attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such an extent that the results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the second prong, a petitioner must establish prejudice, meaning that there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland,*

466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. at 697.

In determining petitioner's trial counsel was not ineffective for failing to challenge the allegedly invalid search warrant, the Court of Appeals stated:

> Witkowski contends that he is entitled to relief because he received ineffective assistance of counsel when his trial counsel failed to challenge a telephonic search warrant on the ground that it had not been signed by the issuing judge or an authorized person had not affixed the judges' signature to the warrant as required by CrR 2.3(c) until several days after the search.
> Witkowski relies on *State v. Ettenhofer*, 119 Wn. App. 300, 79 P.3d 478 (2003). But in *Ettenhofer*, no written search warrant was executed. *Id*. at 303. And because no written search warrant was ever issued, this court held that the error was not a mere ministerial error to which harmless error could apply. *Id*. at 307. Here, Witkowski does not assert that there was no written search warrant at the time of the search. He asserts only that the search warrant was not signed by the judge and/or an authorized person had not affixed the judges' signature to the warrant before the search occurred as required by CrR 2.3(c). Therefore, *Ettenhofer* does not apply.
> Instead, the absence of the issuing judge's signature or the failure of an authorized individual to affix the issuing judge's signature when the search warrant was issued, as required under CrR 2.3(c), constituted a ministerial error that is subject to harmless error. *See Ettenhofer*, 119 Wn. App. At 307. And because Witkowski does not allege that the judge did not authorize the search warrant, the lack of the signature or the failure of an authorized individual to affix the court's signature is harmless. Because the alleged error was harmless, Witkowski's trial counsel did not provide deficient performance by failing to challenge the telephonic warrant at trial, and the ineffective assistance of counsel claim fails.

Dkt. 18-2 at 105-107 (Ex. 22).

In rejecting petitioner's ineffective assistance of counsel claims in petitioner's motion for discretionary review, the Washington Supreme Court stated:

> On his claim that counsel was ineffective in failing to move to suppress, petitioner must show that such a motion would have been granted. *State v.*

REPORT AND RECOMMENDATION - 25

1

*Scabbyrobe*, 16 Wn. App. 2d 870, 874, 482 P.3d 301 (2021). Witkowski

2

challenges the validity of a search of his property pursuant to a second search

warrant, arguing that a motion to suppress would have been granted on the basis

3

of *State v. Ettenhofer*, 119 Wn. App. 300, 79 P.3d 478 (2003). The Court of

Appeals here held that a search pursuant to a warrant was invalid where it was

4

based on a telephonic warrant that was never reduced to writing and signed and

served, as required by CrR 2.3(c) and in violation of article I, section 7 of the

5

Washington Constitution. *Id*. at 307-09. But here a written warrant was prepared,

and though the issuing judge did not personally sign the warrant until a few days

6

later, Witkowski cites no authority suggesting this was anything but a ministerial

defect that does not require suppression absent prejudice, which Witkowski does

7

not show exists. *See Ettenhofer*, 119 Wn. App. at 307 (ministerial mistakes in

issuance of warrant reversible only if defendant prejudiced). Witkowski also

8

asserts there is no evidence he was personally served with the warrant when it

was executed. But he states that he had been arrested after execution of the first

9

warrant, before the second one was issued, and was on his way to jail. And the

property was also occupied by his girlfriend. Further, if no one is present, a copy

10

of the warrant may be posted on the premises. CrR 2.3(d).

    Witkowski finally claims there is no evidence a written warrant had

11

actually been prepared by the time of the second search. But at a suppression

hearing (not concerning specifically the second warrant), the officer who sought

12

the warrant testified that he wrote the warrant on his laptop in his car before

calling a judge, and that when the judge approved the warrant, the officer served

13

it. No. 53412-6-II, Verbatim Report of Proceedings (Aug. 30, 2016) at 74-75.[6]

    In sum, Witkowski fails to show that a challenge to the second search

warrant would have succeeded, and thus he does not show that defense counsel

was ineffective.

14

Dkt. 18-2 at 151-152.

15

    In Ground 1a, petitioner contends his trial counsel was ineffective for failing to

16

challenge the fact that petitioner was not personally served with the search warrant.

17

Petitioner fails to show the state appellate court's rejection of petitioner's ineffective

18

assistance of counsel claim based on the failure to personally serve the search warrant

19

was contrary to or an unreasonable application of clearly established federal law or an

20

unreasonable determination of the facts.

21

    The Court first notes that petitioner cites to no clearly established federal law,

22

indicating that personal service of a search warrant is required under the United States

23

---

[6] [FN 1 by Supreme Court] The reference is to the record from Witkowski's first direct appeal, of
I take notice.

24

25

Constitution. Rather, the United States Supreme Court has held that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." *Groh v. Ramirez*, 540 U.S. 551, 562 (2004); *United States v. Grubbs*, 547 U.S. 90, 99 (2006) ("'The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches.' *United States v. Stefonek,* 179 F.3d 1030, 1034 (C.A.7 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante,* the 'deliberate, impartial judgment of a judicial officer ... between the citizen and the police,' *Wong Sun v. United States,* 371 U.S. 471, 481–482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and by providing, *ex post,* a right to suppress evidence improperly obtained and a cause of action for damages."); *see also Griffin v. Lemaster*, 179 F. App'x 555, 561 (10th Cir. 2006) ("Because there was no constitutional requirement that [petitioner] be given a copy of the warrant or any attachments thereto prior to the search, trial counsel's decision not to file a motion to suppress on that basis was reasonable. Likewise, the state court's determination that the delivery of the affidavit was not a precondition to a valid search is not contrary to clearly established federal law.").

And, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, the Court is bound by the state appellate court's interpretations regarding the requirements of state statute CrR

2.3 and the state law holdings in *Ettenhofer*. Even if this were not the case, petitioner fails to show the state appellate court's legal determinations were unreasonable. Petitioner also fails to show that the state appellate court's factual determinations were unreasonable.

The state appellate court reasonably determined that, under the circumstances, petitioner was not required to be personally served under the terms of the statute. Specifically, Superior Court Criminal Rule (CrR) 2.3(d) provides, in relevant part:

> **(d) Execution and Return With Inventory.** The peace officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken. If no such person is present, the officer may post a copy of the search warrant and receipt.

As the state appellate court found, and petitioner acknowledges, petitioner was on his way to jail before the second warrant was issued and, therefore he was not present at the property to be personally served. Dkt. 18-2 at 156; Dkt. 18-3 at 17, 118, 322, 537. Furthermore, as the state appellate court found, and petitioner does not appear to dispute, the record reflects the property was also occupied by petitioner's girlfriend and, if no one is present at the property, the relevant state statute authorizes service by posting a copy of the search warrant and receipt on the property. *See* CrR 2.3(d). Finally, the state court reasonably determined that the record reflects the warrant was served in this case based upon testimony to that effect by the officer who procured the second search warrant. *See* Dkt. 18-2 at 241-242.

Petitioner points to no evidence, beyond his own speculation, that the warrant was not, in fact, served in accordance with the statute in this case. The state appellate court also reasonably interpreted its holding in *Ettenhofer*, as requiring suppression of evidence where no *written* search warrant was issued, not as requiring suppression

where an individual was not personally served but was instead served by another appropriate means under the statute. *See Ettenhofer*, 119 Wash. App. at 308; *State v. Whitford*, 7 Wash. App. 2d 1042 (2019) ("The *Ettenhofer* court did not isolate the three discrete violations of CrR 2.3 as being sufficient alone to invalidate the warrant. The court tied the requirement of delivering a copy of the warrant to the accused as bolstering its conclusion demanding a written warrant. The court only referred to 'the written warrant requirement' as constitutionally imposed.").

Thus, petitioner fails to show that a challenge to the validity of the search warrant based on lack of personal service had merit. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."). Nor has petitioner shown that there is a reasonable probability a motion challenging the search warrant on this basis or attempting to suppress evidence obtained during the search would have been granted and the outcome of the trial would have been different. *See Lowry v. Lewis*, 21 F.3d 344, 346–47 (9th Cir. 1994) (to show prejudice, the petitioner "must establish that had the motion [to suppress] been filed, there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different had the evidence been suppressed.").

Accordingly, petitioner fails to show the state appellate court's rejection of petitioner's ineffective assistance of counsel claim based on the failure to personally serve the search warrant was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

1      In Grounds 1b and 1c, petitioner contends his trial counsel rendered ineffective

2  assistance by failing to object to an invalid search warrant on the basis that no affixed

3  court representative signature appeared on the search warrant on the date of the

4  search and on the basis that the document was signed by the authorizing judge four

5  days after the search occurred. Dkt. 7 at 5.

6      Petitioner cites to no clearly established federal law, holding that a search

7  warrant is per se invalid, requiring suppression of evidence found during the search, if it

8  is authorized by a judge prior to the search but not signed by the judge until several

9  days later. Rather, some Circuit Courts have found there to be no requirement under

10  the Fourth Amendment that a state search warrant be signed. *See United States v.*

11  *Lyons*, 740 F.3d 702, 724-25 (1st Cir. 2014) (Addressing a claim that a search warrant

12  was invalid requiring suppression of evidence because, although the search warrant

13  was authorized by the judge prior to the search, it was not signed until after the search

14  and finding "[w]e see nothing in the [text of the] Fourth Amendment that conditions the

15  validity of a warrant on its being signed. ... [W]e see no convincing reason to find implicit

16  in the Fourth Amendment a constitutional mandate that the magistrate who has made a

17  probable cause determination also sign the warrant."); *United States v. Cruz*, 774 F.3d

18  1278, 1285 (10th Cir. 2014) (agreeing with *Lyons*); *United States v. Turner*, 558 F.2d

19  46, 50 (2d Cir. 1977) ("As long as the [judge] in fact performs the substantive tasks of

20  determining probable cause and authorizing the issuance of the warrant, the [Fourth

21  A]mendment is satisfied.").

22      Furthermore, as noted above, the Court is bound by the state court's

23  interpretation of state law. *Bradshaw*, 546 U.S. at 76. Thus, the Court is bound by the

24

25

state appellate court's interpretations regarding the requirements of CrR 2.3 and the state law holdings in *Ettenhofer*. Even if this were not the case, petitioner fails to show the state appellate court's legal determinations were unreasonable. Petitioner also does not show that the state appellate court's factual determinations were unreasonable.

In rejecting petitioner's claims, the state appellate court reasonably distinguished petitioner's case from *Ettenhoffer*. 119 Wash. App. 300. In *Etenhoffer*, the Washington State Court of Appeals held a search unconstitutional where police had received telephonic approval to search but did not have a written warrant as required. *Id.* In petitioner's case the state appellate court found that, unlike in *Ettenhofer*, a written warrant was prepared, authorized by a judge, and served. *Id.* The state appellate court cited to the fact that at a suppression hearing (not concerning specifically the second warrant), the officer who sought the warrant testified that he wrote the warrant on his laptop in his car before calling a judge, and that when the judge approved the warrant, the officer served it.

The record supports the state court's factual findings. Dkt. 18-2 at 168, 241-242.

The state appellate court further reasonably concluded that the absence of an authorizing signature on the date the search was conducted and the four-day delay in the judge affixing his signature were ministerial defects that did not require suppression absent a showing of prejudice. The state appellate court also reasonably determined that petitioner had failed to show he was prejudiced by the ministerial defect. As the state appellate court noted, petitioner did not allege that the judge did not authorize the search warrant and thus the lack of the signature or the failure of an authorized individual to affix the court's signature was harmless.

Accordingly, petitioner has not shown that a challenge to the validity of the search warrant had merit. *See Shah*, 878 F.2d at 1162. Nor has petitioner shown that there is a reasonable probability a motion challenging the search warrant or attempting to suppress evidence obtained during the search would have been granted and the outcome of the trial would have been different. *See Lowry*, 21 F.3d at 346–47.

Therefore, petitioner has not shown the state appellate court decision finding trial counsel was not ineffective on this basis was contrary to, or an unreasonable, application of clearly established federal law, or that it was based on an unreasonable determination of the facts.

Accordingly, the Court recommends that Grounds 1a, 1b and 1c should be denied because the claims raised by petitioner are meritless, and the *habeas corpus* petition should be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for *writ of habeas corpus* (Dkt. 7) with prejudice. The Court further recommends that a certificate of appealability (COA) be denied. A proposed order and proposed judgment are attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **June 17, 2025**, as noted in the caption.

Dated this 2nd day of June, 2025.

*Theresa L. Fricke*
—————————————————
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 33